UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALECIA M. NOBLES,

                        Plaintiff,

-vs-                                            Case No. 6:06-CV-856-ORL-KRS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

## ORDER

This cause came on for consideration without oral argument on the Complaint filed by Alecia M. Nobles[1], seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits.  Doc. No. 1.  The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA).  Doc. Nos. 14, 15.  Pursuant to the consent of the parties, this matter has been referred to me for disposition under 28 U.S.C. § 636(c). Doc. Nos. 25, 27.

## I.     PROCEDURAL  HISTORY.

In September 2003, Nobles applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*.

_____

[1] The record reflects that Plaintiff was also known as Alecia M. Vaglica.

(sometimes referred to herein as the Act), alleging that she became disabled on January 1, 2002. R. 226-28.  Nobles' applications were denied initially and on reconsideration. R. 230-43.

Nobles requested a hearing before an administrative law judge (ALJ).  R. 37.  An ALJ held a hearing on December 13, 2005.  Nobles, represented by a non-attorney representative, and Donna Mancini, a vocational expert (VE), also testified.  R. 40-59.

After considering the testimony and the medical evidence presented, the ALJ determined that Nobles was insured under OASDI through September 30, 2003. R. 17. The ALJ found that Nobles had not engaged in substantial gainful activity at any time relevant to the decision.  R. 17.

The ALJ concluded that the medical evidence showed that Nobles had migraine headaches, which were severe impairments.  These impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings).[2] R. 17.

The ALJ concluded that Nobles had the residual functional capacity (RFC) to perform light work with no prolonged climbing, balancing, stooping, or exposure to heights, moving machinery, and bright lights.  R. 18.  While the ALJ found that Nobles' impairment could reasonably be expected to produce the alleged symptoms, her

---

[2]  The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

statements about the intensity, duration and limiting effects of her symptoms were not entirely credible in light of the medical evidence in the record.  R. 18.

The ALJ concluded that Nobles could not return to her past relevant work because that work exceeded her RFC. R. 19.  Relying on the testimony of the VE, the ALJ concluded that Nobles could perform the light duty positions of blood donor attendant, non-postal mail clerk, and investigator dealer accounts, and the sedentary duty positions of addresser, order clerk and charge account clerk.  R. 20.  Therefore, the ALJ concluded that Nobles was not disabled.  R. 20.

Nobles requested review of the ALJ's decision. R. 9.  The Appeals Council found no basis to review the ALJ's decision.  R. 3.  Nobles timely sought review of that decision in this Court.  Doc. No. 1.  At the request of the SSA, the Court remanded the case to permit the Appeals Council to admit additional evidence into the record.  R. 244-45.  The new records included a July 17, 2006, report of examination by Ralph J. Zwolinski, M.D. R. 248-49.   Following receipt of the new evidence, the matter was again presented to this Court without further ruling by the Appeals Council.  R. 13, 17.

II.      **JURISDICTION.**

Plaintiff having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

### III.    STATEMENT OF FACTS.

After a thorough review of the entire record, I find that the facts are adequately stated in the ALJ's decision and in the parties' memoranda.  Accordingly, I will only summarize the pertinent facts to protect Nobles's privacy to the extent possible.

On the alleged disability onset date, Nobles was 21 years old.  R. 43, 226.  She attended school through the eleventh grade and later obtained a GED.  R. 43.

Nobles previously worked as a waitress, kitchen aid and theater attendant.  R. 44, 55, 182.  She also tried to attend community college, but did not complete it because she missed so many classes due to illness.  R. 43.

Nobles had had migraine headaches since she was 8 years old. *See, e.g.*, R. 101.  R. Eric Rosemund, Jr., M.D., treated her for these problems since at least 1988.  R.  67-103.  Dr. Rosemund's records reflect that Nobles' migraines became more frequent despite medication.  *See, e.g.,* R. 71.

Vicente Trapani, M.D., treated Nobles beginning on April 30, 1998.  R. 65.  During the first visit, Nobles indicated that she was having daily headaches, which she described as "throbbing, bi-frontal and generalized, radiating to the neck and shoulders."  R. 65.  They were not associated with nausea or vomiting but were positive for photophobia and phonophobia.  The headaches also interfered with her ability to fall asleep.  She had tried both over-the-counter and prescription medication without relief.  R. 65.  Dr. Trapini observed that Nobles was in acute distress.  R. 65.  Despite a variety of treatments, in October 1998, Nobles indicated that she continued to have migraine headaches 2 to 4 times per week lasting up to one day and ranging 8 to 10 in pain on a

10-point scale.  R. 62. Dr. Trapini continued to adjust her medication.  R. 61.  Some of the medication appeared to approve her symptoms, but she was not always compliant with respect to her medication.  R. 60.

Dr. Zwolinski began treating Nobles on May 17, 2002.  R. 162.  She still complained of chronic daily headaches with sensitivity to light and sound accompanied by nausea and vomiting.  R. 162.  She scored a 68 on the Headache Impact Test and over 20 on the Midas Scale, which Dr. Zwolinski opined indicated "severe degrees of disability."  R. 162.  Dr. Zwolinski prescribed medication and instructed Nobles to keep a headache diary.  R. 164; *see also* R. 137-38, 141, 218-23 (headache diaries).  In subsequent visits, Nobles reported no improvement in her symptoms.  Dr. Zwolinski continued to adjust her medication regimen.  R. 159-161.

On September 16, 2002, Nobles reported some improvement with use of Frova, but she continued to use Imitrex for breakthrough pain.  R. 158.  However, on September 24, 2002, Nobles reported that her headaches had worsened again.  Dr. Zwolinski discontinued use of Frova and prescribed other medication.  R. 157.  On October 28, 2002, Dr. Zwolinski wrote that Nobles was "slowly beginning to improve in terms of the frequency and severity of her headaches."  R. 156.  Yet, on December 16, 2002, Nobles reported frequent and recurrent headaches after ceasing to use Topamax.  Dr. Zwolinski advised her to continue using Topamax and her other medication. R. 155.   She continued to report frequent recurrent headaches through July 2003. Dr. Zwolinski observed on July 22, 2003, that Nobles had marked photophobia. R. 149-54.

Dr. Zwolinski's notes reflect on July 29, 2003, that Nobles had had some improvement with use of Prednisone.  R. 149.  He noted on August 12, 2003, that Nobles was in a moderate amount of distress secondary to her headache with sensitivity to light in his office.  R. 147.  As of October 2003, Nobles indicated that she was using less Imitrex due to a decrease in her severe headaches.  R. 144.  Nevertheless, she continued to have chronic daily headaches.  R. 142.  As of December 1, 2003, Nobles had lost 25 pounds on an exercise program.  R. 142.  As of June 2004, she continued to report chronic daily headaches.  R. 139.

On March 1, 2005, Dr. Zwolinski wrote that Nobles "maintains an adequate level of functioning with the combination of Imitrex oral, injectable and Tylenol with codeine." R. 127.  In September 2005, Nobles reported experiencing migraine headaches about 3 times a week with depression and anxiety.  R. 165.  As of June 2005, Nobles indicated that the migraine headaches were more severe and occurred 3 to 4 times per week.  R. 166.

In December 2003, Nobles sought emergency room treatment for dizziness and light-headedness with fear of blacking out.  R. 113.  An MRI of the brain was unremarkable.  R. 105, 117.  The clinical impression of the treating physician was ophthalmic migraine.  R. 112.

On February 20, 2004, Peter Pitrochy, M.D., prepared an RFC assessment based on review of Nobles' records.  He opined that Nobles had no exertional or nonexertional impairments.  R. 118-25.

On remand, reports of treatment in 2006 by Dr. Zwolinski were added to the record.  R. 248-51.  Dr. Zwolinski wrote, in a letter dated April 17, 2006, that Nobles had experienced for "the past several years intractable daily migraine type headache[s]" that had continued despite multiple treatment approaches resulting in "significant disruption of her lifestyle."  R. 251.  In July 2006, Nobles still reported chronic daily headaches that were interfering with her functional capacity. R. 248.

At the ALJ's hearing, Nobles testified that she was experiencing severe migraine headaches 4 to 6 times a week lasting between 24 to 72 hours each time.  R. 45-46.  When she had a migraine, she became nauseous and needed to go to a dark and quiet room and lie down.  R. 46.  She also sometimes became dizzy and passed out.  R. 48.

Nobles had tried a variety of medication and treatments to alleviate her migraines.  R. 45.  Other treatments had been proposed, but she did not have insurance to cover those treatments.  R. 47.  Some medications relieved her migraines for brief periods.  R. 47.

When not experiencing a migraine, Nobles estimated that she could lift 10 pounds.  R. 52.  She had a driver's license, but no longer drove a vehicle except close to her home.  R. 48, 53.

The ALJ asked the VE to assume the following hypothetical claimant:

> [She is] 21 years of age on her onset date.  Has a 12th grade education.  Her past relevant work as indicated.  Suffering generally mostly from migraine headaches.  Suffering from moderate pain and discomfort. . . . [S]ome adequate functioning level with her meds.  You have to avoid prolonged climbing, balancing, stooping, heights and moving machinery.  Avoid bright lights.  But . . . able to do sedentary and light work activities.

R. 55-56.  The VE testified that this person could perform the work of addresser, food and beverage order clerk, charge account clerk, blood donor clinic assistant, mail clerk, and investigator dealer accounts, each of which jobs existed in significant numbers in the national economy.  R. 56-57.  All of these jobs would require the individual to be alert with adequate concentration and to attend work 5 days per week.  R. 58.  If the individual would miss 2 or more days of work a month, the VE testified that she could not perform any of these jobs.  R. 58.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(4) Is the claimant unable to perform his or her former occupation?

(5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla,

and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.    ANALYSIS.

Nobles argues that the ALJ erred by failing properly to address the functional limitations arising from pain and her credibility regarding these limitations. She asserts,

as well, that the ALJ's hypothetical question to the VE was incomplete.  These are the only issues I will address.[3]

A.      *Pain and Credibility.*

The ALJ applied the pain and credibility standards used in this circuit.  *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Even though the ALJ noted that no objective tests confirmed the existence of migraine headaches, he found that Nobles' impairment could have been reasonably expected to produce the alleged symptoms. He articulated specific facts, based on evidence in the record, to support his conclusion that these symptoms were not a severe as Nobles testified they were.

The ALJ correctly observed that there was no statement from Dr. Zwolinski, or other treating physicians, about her functional capacity.[4]  Indeed, Dr. Zwolinski wrote on March 1, 2005, that Nobles was able to maintain an adequate level of functioning on her medication regimen, although he later wrote that her migraines had significantly interfered with her lifestyle.  She had been able to exercise sufficiently to lose 25 pounds.  Nobles had not reported episodes of blurred vision and blacking out, although there is one emergency room record from 2003 in which Nobles reported being dizzy and light-headed.  And, while Nobles contends that even office lights cause headaches, I

---

[3] The parties were advised in the Scheduling Order that any issues not specifically raised would be waived.  Doc. No. 18.

[4] The absence of a functional capacity assessment from a treating physician distinguishes this case from *Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996), relied upon by Nobles.

noted only one instance in the record in which Dr. Zwolinski observed that Nobles' headaches were exacerbated by his office lighting.

Contrary to Nobles' assertion, the ALJ did not discredit her testimony solely because it was inconsistent with objective medical evidence.  Rather, the ALJ reviewed all available evidence, including the objective medical evidence, and determined that the functional limitations arising from Nobles' migraine headaches were not a severe as she reported.   This was exactly the analysis required under the law.  *See, e.g., May v. Comm'r*, 226 Fed. Appx. 955, 958-59 (11th Cir. 2007); *Arnold v. Heckler*, 732 F.2d 881, 883-84 (11th Cir. 1984).  Because substantial evidence in the record supports the ALJ's conclusion, no basis exists to overturn the decision based on the application of the pain standard and assessment of Nobles' credibility.

B.      *Hypothetical Question to the VE.*

Nobles also submits that the ALJ's hypothetical question to the VE was incomplete because he indicated that Nobles should "avoid" bright lights while he opined in his RFC assessment that Nobles should have "no" exposure to bright lights.  While I recognize the distinction between "no" and "avoid," Nobles cites no authority for the proposition that this discrepancy is sufficient to render the VE's testimony unreliable regarding the jobs that Nobles could perform.  *See Wind v. Barnhart*, 133 Fed. Appx. 684, 694 (11th Cir. 2005)(hypothetical question that stated claimant had "'psychological and emotional problems that [would] bring her to a limited but satisfactory, a mild to moderate description of her ability to perform [certain work tasks][*sic.*]'" did not mischaracterize the degree of claimant's limitations, which the ALJ stated were "moderate" in the RFC); *Marshall v. Barnhart,* No. Civ. A. DKC 01-2211, 2002 WL

32488432, *8 (D. Md. Sep. 27, 2002)(although there was a literal discrepancy between the ALJ's RFC that claimant was "preclud[ed]" from certain exertional activities and the hypothetical question that stated she was "limit[ed]" from those activities, the hypothetical question posed to the VE adequately described claimant's impairments and the difference in the wording of the RFC did not result in any error).

Accordingly, because the ALJ applied the correct legal principles, and substantial evidence supports his conclusion, none of Nobles' assignments of error are availing.

**VI.    CONCLUSION.**

For the reasons stated herein, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   I direct the Clerk of Court to enter judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** this 25th day of March, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE